23-2287. Mr. Garland, you have five minutes reserved for rebuttal. Yes, thank you. Let's wait just a little bit until you can start. May it please the Court, Honors, the Court below erred on two different fundamental levels because the undisputed facts in this matter and all inferences to be drawn from those facts, particularly when viewed in favor of Mr. Mumrey, as the law requires, do not support a determination that as of 2010 or 2013, the impacts of the snowmobile activity constituted a material interference with the ski area operations, nor, secondly, do those facts show that Mr. Murray did or was even entitled to cease operations of the ski area operations as of that point in time as late as 2013, and then bring his specific claim for damages, which is the claim he brought here, based on the cessation of damages. In Mr. Murray's complaint, in the record clearly demonstrate that the one and only claim that Mr. Murray filed was a claim for a total breach, which entitled Mr. Murray to seek damages based on a total breach, which included the value of his improvements and all profits going forward for not being able to operate. Let me talk about the standard that the trial court was supposed to apply, and I think the standard was applying, you've already alluded to it, but I'm confused about when on a motion to dismiss that goes to subject matter of the Court of Federal Claims, when the court has to take as true things that you allege versus when it can resolve a dispute that goes to its jurisdiction, and I'm confused on what happened here. Can you help me on that? Yes, my understanding of that, based on the court's findings, there was no dispute as to the actual facts as far as what was said. It was a question of, did those facts meet the standard of material interference? Because I think the court stated in its opinion, it's going to accept, because first of all, to make the fundamental point, the government stated, we're not disputing anything. We're agreeing with the complaint in the allegations. For purposes of a motion. For purposes of a motion. And the court took that word to go forward. Based on that, there was no dispute. I mean, the court accepted all of the statements that were made in the complaint, and the court reused the deposition testimony, which is what it was. So there was no dispute as to what the evidence was. So it boiled down to, does that evidence in fact demonstrate that there was material interference as of 2010? So, do you read the Court of Federal Claims as having made any fact findings, in its opinion? I, we do not dispute the, we believe they did make fact findings to the extent they cited to the record in the testimony. Because obviously the quotes that Mr. Murray had in his deposition, that was the fact. That's what he stated. So we don't believe that they made any, we believe that they made fact findings, but they were findings that were of undisputed facts. In essence, they were confirming what the undisputed facts were. Am I getting at your question? Well, I think, but I'm finding it confusing. I'm not blaming you. Between, it seems to me that given the government's concession and the fact that it's a motion to dismiss, we can all agree on what happened from 2010 to 2013 in terms of how much snowmobiling activity there was and what the back and forth communications were. But as to whether, at what point things got so bad that even Mr. Murray thought that it was materially interfering with his rights, it's unclear to me whether the Court of Federal Claims was within its rights to say, I'm going to carefully and critically review what Mr. Murray said in my own assessment as to when it became material interference, or whether it was supposed to just take all that in the light most favorable to Mr. Murray for purposes of determining whether or not it had jurisdiction. I don't know if I'm being clear about that. Yeah, well, if I understand you correctly, I agree with the latter statement you made, that I think the Court was required to accept everything Mr. Murray stated as a true fact, and then the question became when you took those facts, which are undisputed, and you held them up to the standard of the contract, did they meet that standard of material interference? Can I just ask a follow-up question? Sure, Your Honor. Do you consider that there were facts on the state or not by the Court? I guess I'm confused by your question, Your Honor, only because obviously the Court does set forth facts in its opinion, but to the best of my recollection, I don't think we challenged any of those because those were taken from the record. For example, there's quotes from Mr. Murray. There are quotes from documents in the record. I don't recall there being any material facts that the Court relied upon that were not clearly set forth in the record. Therefore, I guess I don't want to fail to... So the Court took these facts under consideration and then made a decision on whether they mounted to a material interference, correct? Correct. That's the finding that it made, whether or not there was material interference in this case, because that's what the allegation in the complaint for breach of contract was based on. That was a material interference entitling to cease operations. Material interference, and so that's... So the question, was there material interference, is that a question of fact or a question of law? I believe, Your Honor, there's case law that demonstrates that when you have undisputed facts and you're taking those facts and seeing whether they meet a standard of law, that boils down to a matter of law. And let me try to... That boils down to what? A matter of law, I believe, as far as it's a de novo review by this Court, but it's a question of law. And I'm trying to find that. Your Honor, I do have it here somewhere, and it isn't on brief. Here it is. It's the Gilbert v. Department of Justice case 334, Feb. 3, 1065. And that case basically states that where facts are undisputed, the determination of whether a breach occurred is reduced to a question of law. Does that help? But here the facts are undisputed only for purposes of the motion. You're not here asking us to enter judgment for you that there was material interference. Absolutely correct, Your Honor. Yes, no, we believe this case should go to trial on that issue. Yes, because there are more facts, no doubt. There was summary judgment argued at the same time, I think, as the motion to dismiss. If we were to rematch, shouldn't the trial court have a chance to reach the summary judgment motion? They do not, actually. They only ruled on the motion to dismiss. Right, I'm saying if you win on this appeal, isn't the summary judgment motion still running? I believe so, because if I recall, the summary judgment motion was their claim that Mr. Murray somehow had authorized this noble activity. So, yes, that would then... You would be able to go back, and the Court would have to deal with that, I would think, so yes. Yes, Your Honor. So, going back then to the issue of what this case seems to boil down to is, as I mentioned, two fundamental levels. And the first one is whether or not there was, first of all, whether or not the Court used a proper definition of material interference, and the facts show that that existed as of 2013 at the latest. And the second issue, which is that regardless of that, whether or not Mr. Murray had ceased operations and was entitled to bring this claim for the poor damage he did back in 2010 or even 2013, long before he ever actually ceased operations. So, I have to take those one at a time, because I think the second one, if you were to agree, pretty much resolves the case that his claim did not arise then, but I want to make sure I address all the different possibilities. So, focusing on the first issue of whether or not the Court used the proper definition of material interference, and the facts met that definition, as we pointed out in our brief, the Court relied upon a dictionary definition of material from the Oxford Dictionary, which was of serious or substantial import, significant, important, of consequence. As we pointed out in our brief, that actually is a pretty broad standard when you're trying to establish a breach. And we believe that when you use the word material interference, specifically the term material in a contract clauses of what constitutes a breach, it needs to be more than that. And actually, what we're proposing is not necessarily inconsistent with the Oxford Dictionary, because the Oxford Dictionary refers to it being of consequence. And that, I think, is really the point where you bring in the fact that it must be vital to the contract. It can't be some minor, it can't be some smaller amount, because I think the fact that the judge used a very low threshold, which is inviting, to be frank with you, a lot of lawsuits, is demonstrated by the fact that when he explained the fact that under that standard, quote, interference is serious and substantial enough to prompt action on the part of the business to mitigate the situation. As you pointed out, I think we all would agree, businesses take actions to deal with things that aren't always material. I mean, they're going to try to head off problems. They're always going to be taking actions. Under the definition that you are reading, then, why would this be a material interference prior to 2016? It would not, Your Honor, because it's a material interference with the operations. The operations we have to keep in mind are the whole ski area. You've got a ski hill, you've got a lift, you've got a parking lot, you've got a restaurant. If you look at the facts that are in the record as to what was going on in 2013, Mr. Murray very clearly testified that this whole thing didn't even start until 2010. And it started very slowly with one or two people doing it. He continued operating. It was not having a material impact on the operation. Material interference doesn't seem to me to apply as to whether or not they should continue operations. It's when did they realize that things were, let's say, that things were bad? Understood. But I think material has to be more than just one discrete impact on the operations. And that's what was going on here in 2010. You had an issue in the parking lot. Mr. O'Rourke, what specific allegations and complaints do you think show a difference in the material conditions between 2010 and 2013? We believe, Your Honor, that... Can you repeat the allegations and the complaints with respect to that? Yeah, we... Can you hear me? Yes, I can. Yes, I did hear you. But there was a little bit of a blip, but I believe I know your question. And the fact... I'll try to say it again. What specific allegations and the complaints do you think show a difference in the material conditions between either 2010 or 2013 and 2016? Yeah, but the difference is that in 2010 and 2013, it was small. It was a few people doing it, and it was gradually growing. What happened in 2016... What are the factors of the complaints that you can point me to? I can point you to Mr. Murray's testimony... Sorry, the complaint. Let me pull that up, Your Honor. But it's basically the description of what happened in 2016 that led to Mr. Murray having to cease operations. Because I think it's important to keep in mind that this permit was signed by Mr. and Mrs. Murray. Mrs. Murray has passed away in their personal capacity. So therefore, they're personally liable if something goes wrong, if there's an injury out there. Mr. Murray, do you have anything to say about the specific paragraphs of the case that you can point me to in terms of showing the differences between 2010, 2013, and 2016? Do you have the appendix page numbers or paragraph numbers? Okay, what I'm looking at then, Your Honor, is the paragraphs that talk about what happened in 2016. And those are paragraph 45... What page, please? I'm sorry, page 26 of the appendix. Paragraph 45, and we went to, I guess, 46, and then we talked about what happened afterwards. But that's what we described. And again, this was further developed in Mr. Murray's testimony, his deposition testimony, where we talk about the fact that it got to the point where if you look at the chance of injury, chance of harm, combined with the impact of that harm, Mr. Murray realized that it was unmanageable. He couldn't continue operating because the risk was too high. He had to stop operations. It had gotten out of control. But that's a different standard than material interference. It is, but I guess... It is definitely, we believe, material at that point. So if I understand Your Honor's question, you're saying, but did it get to that point before then? We do not believe it did. We don't think the record shows that it got to that point. I wanted you to also point me to the paragraph that would kind of show where things were at that earlier time frame. Okay. I want you to look at the paragraphs. Sure, Your Honor. If you look at paragraphs in the complaint of, in, I'm going to start with 2004. Paragraphs 26 on appendix page 23, through paragraphs, it looks like paragraphs... I want to see that. Can I have your papers over the microphone? Anybody's papers over the microphone to help me to understand what you're saying. Okay, I apologize. I will try to stop shuffling my papers before I respond, Your Honor. The paragraphs that talk about what happened beforehand, before 2016. Can you hear me? Your face indicates maybe you're having... You keep talking. I feel like my colleagues know me too, so as long as you don't interrupt or interrupt my question on those paragraphs that relate to the 2010-2013 time frame, that would be the... Okay, I promise you I'm not shuffling papers.  I'm looking at appendix page 24. Page 23. What we talked about, paragraph 27, is really when you start to talk about the issue, it looks like arising all the way through paragraph 36 on appendix page 25. But I would just remind the court in our defense that the 2010-2013 period was selected by the court. Actually, the government argued it was 2011, so we did not focus on that period in our complaint because we did not believe that period was relevant. To the actual breach which occurred in 2016. So that issue as to what was going on in that period was further developed, I think as the record shows, in Mr. Murmury's deposition, as well as documents that were issued in that time period. That is, it looks like the way you allege the case, there was a world before 2016 and then there was a world in 2016. Correct. Yes, Your Honor. Can I just ask you, though, the trial court mentions at page 5 of the appendix that in July 2010, Mr. Murmury told Forest Services that he was going to close the lot entirely to snowmobiles for the 2010-2011 season. Doesn't that mean there was a serious problem already by 2010-2011? No, we don't believe so. We believe that when you look at it in full context and take all inferences in favor of Mr. Murmury, given his description of what was happening then, he's trying to head things off. I mean, that's what a prudent businessman does. You don't wait until the problem gets to the point where now you've got a serious risk. You move ahead of time. And if you look at that comment, which is just talking about keeping those folks out, he's not talking about closing operations. I would like to keep these folks out because I see a problem here that's starting out in 2010, and I think he was very clear, it started out small and grew. That's a prudent businessman taking action to head off a problem. I don't think that should be construed, especially as a favorable inference, that at that point in time it was material and you needed to do something about it. I think he was ahead of the curve when he did that. Okay. Okay? We'll restore your rebuttal time when you get back. Thank you, Your Honor. Okay. Counselor Oren. Did I pronounce that correctly?   Yeah. Okay.  You may proceed. May it please the Court. The government's position is that the trial court correctly determined that Mr. Murray's breach of contract claim arose as early as 2010 and by 2013 at the latest and is therefore untimely under the statute of limitations. As Your Honor was discussing earlier, the trial court here properly inquired into jurisdictional facts and under this court's case law, the claims court can do so even if those jurisdictional facts are even disputed. So it follows that the trial court here would be able to look into jurisdictional facts that are unknown in order to determine its own jurisdiction. So are you saying that these are findings of fact just for purposes of the jurisdictional question? That's correct, Your Honor. And specifically, I'm referring to Appendix 10 where the trial court determined that Mr. Murray did suffer, in fact, a negative impact on both revenue and business reputation sufficient to constitute material evidence. And our standard of review with respect to those findings of fact is what? That would be clear error, Your Honor. I'm sorry? Clear error. Clear error? Yeah, that's correct. So how do you square the trial court's making findings of fact with what we said in trusted integration, which the court itself below quoted, the court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff? Well, the facts here, the underlying facts, the facts in terms of what actually happened from 2010 to 2016, those are not disputed for the purposes of the motion to dismiss. But for the purposes of determining its own jurisdiction, I think the court can look beyond simply just the complaint and the facts alleged therein. So looking at, for example, Mr. Murray's testimony, those are facts that were necessary to evaluate in order to basically determine whether there was material interference. Where is the requirement to draw all reasonable inferences in favor of the plaintiff come in? Does it not apply to even when the court begins to look outside of the complaint? I think for the purposes of jurisdiction, the plaintiff has the burden to prove by providers of evidence that the court has jurisdiction here. So I think to your point, I think that... I'm sorry, could you ask the question again?  I mean, the requirement to draw all reasonable inferences in favor of the plaintiff as the non-moving party on a motion to dismiss at minimum applies to the undisputed facts in the complaint, correct? That's correct. I think you're saying that it also applies to disputed facts going to jurisdiction, but that's what I'm trying to explore. Or maybe, I'm sorry, now I'm getting it backwards. When the trial court looks outside of the complaint to determine if it has jurisdiction, does it have to take the facts in the light most favorable to the plaintiff, or does it not? I don't believe it does, Your Honor. And here, more importantly, I don't think there's any argument that the court erroneously did evaluate some of these facts in terms of determining its own jurisdiction. Here, you know, it seems to be that Mr. Murray is really arguing that all these facts are simply just not enough to give rise to material interference, where the court made as a factual finding that it was. Right, so here he says everything was fine until 2010, then these massive snowmobile operations are invented, and they start showing up here and there in my parking lot. It gets worse every year, but it wasn't until 2016 that it really interfered with my ability to operate a ski resort. And the trial court says, no, I don't buy that. It actually was bad enough at least by 2013 that it materially interfered with your operations. That seems like a fact dispute for trial as opposed to something the court can resolve against the plaintiff at a motion to dismiss. I guess I'm having a hard time articulating this because I actually think this is a problem with the law in the sense that for the purposes of when a claim accrues, the court doesn't look at the magnitude of the damages that a plaintiff suffers. Really, the focus of the analysis is the defendant's actions, and here it's the government's action or the Forest Service's action authorizing snowmobile activity in the parking lot of the ski resort. And so this comparison between what his damages or what the interference was back in 2010 versus interference in 2016, it's really relevant to the purposes of the statute of limitations. The analysis is just when could Mr. Murray have brought a breach of contract claim? When did that claim actually accrue? So it's our position that, and as the trial court correctly decided, that claim accrued back in at least 2013, if not as early as 2010, where Mr. Murray testified to a variety of issues that began in 2010. For example, snowmobilers being drowned, speeding past kids, and so forth. The way the trial court looked at this, it seems as if it could have been material interference and he could have brought a claim in the trial court's view as soon as he saw one of these snowmobilers and he walked over and asked them, you know, stop drinking or stop, you know, snowmobiling around the parking lot. As soon as he took one action because he didn't like what he was seeing, at least under the trial court's analysis, it seems that that was enough. He could have brought his claim then. And if he didn't do it within six years of that first time, then he's out of luck. I think the trial court's opinion is really stating that the earliest possible time, yes, would have been 2010, where I think the trial court is referring to a letter that Mr. Murray sent to the Forest Service that he was banning snowmobiles from the parking lot. I think it was in July of 2010. And so that's maybe the earliest time in which, I guess there's a very clear evidence that Mr. Murray himself saw a potential problem with the Forest Service authorization of snowmobile activities. But certainly by 2013, where there's a whole host of other issues that have appeared, as Mr. Murray has said, incrementally, certainly by that point, there should have been a breach of contract claim that he could have brought. And so... Do you believe that he, and I think one case that might actually address this is Peter Steinmeier v. Watkins, but doesn't that case and other template cases talk about the fact that the trial court can do backfiring when there are controversial obligations? I think that's correct. The case that is referred to in a brief and that I'm referring to here is Rogovich v. United States, where it says, whether a motion to dismiss should be granted, the court may find it necessary to inquire into jurisdictional facts that are disputed. And so, again, that goes back to the point here that the trial court here appropriately looked beyond the complaint. But looking beyond the complaint, it seems to me, is something different than resolving fact disputes. I don't think anyone disagrees that it looked beyond the complaint. He quotes the deposition throughout the opinion. But I think I understand your friend on the other side to be saying there was no resolution of fact disputes because the government said for purposes of the motion we accept all the facts as pled. And I'm not sure I see where in the opinion, but maybe you can show me, where the trial court is making a finding of facts. I think the trial court made factual findings in relation to the jurisdictional question of when there was material interference under the facts alleged in the complaint and under the facts that were testified to by Mr. Murray in his deposition. So I think the culminating fact that was found by the trial court was, again, that Mr. Murray suffered a negative impact on both revenue and business reputation on Appendix 10. So, I mean, that would be a factual finding. In addition to that, moreover, the fact that material interference was was hit, that threshold was hit sometime in the 2010-2013 time frame, that would in itself also be a factual finding. So, I mean, really the only legal question that the trial court decided was what material interference actually meant in the context of the permit. In your view, does that mean an indication of loss of income or could it also be an indication of of safety, safety to individuals? I'm sorry, I don't understand. What would you say constitutes a material interference? Loss of revenue or loss of safety? Safety out in the parking lot and, you know, everything that was alleged here. I think it could be both, Your Honor. It could be a safety, general safety issue and I think it could be a loss of revenue. I think certainly a loss of revenue would be an impact, a material impact on a business. But, I mean, to the extent that a business does have to take Perhaps, what if the other comments, the earlier comments in 2010, those are directed more to safety as opposed to loss of income? I think it would still be, it could be a material impact to the extent that the business or Mr. Murray has to take steps to alleviate those safety concerns. And so if a business has to take affirmative actions and spend money doing so or time or effort doing so, that would potentially be a material impact or material interference with the operation of a business, I guess precisely. Let me tell you my concern here. The deposition testimony, it seems to me, perhaps like all or most deposition testimony, can be read in a couple of different ways. And it seems like the trial court is reading it in a way that is skewed against Mr. Murray. Maybe that's the best reading, maybe it isn't. But that seems like something that isn't done on a motion to dismiss. And it also, I'm concerned that the trial court doesn't really carefully explain that that's what it's doing, and it understands that it can do that in a jurisdictional motion to dismiss. Can you help me with any of that? I think again, Your Honor, I think the legal issue or the legal analysis is framed more properly as focusing on what the Forest Service did. Like what exactly is the action that occurred that supports a material interference? And here it's undisputed that it's the Forest Service's authorization of snowmobile activity. And that started undisputedly as far back as 2004. And the only question you hear is really when that authorization started becoming a material interference. So... I mean, even looking beyond the testimony, there are documents in the record that demonstrate that there's a clear inflection point where Mr. Murray looks at the situation, sees that it's a problem, and then takes action. And more specifically, I'm referring to his letter again in 2010 where he tries to post up signs banning snowmobiles. But I think it's a hard case because I think even in your answer, you're running to how Mr. Murray viewed things. But I thought your overriding point was it doesn't matter what Mr. Murray thought. Yeah, so my point is that in 2011, the Forest Service comes back, sends him a letter in response and says that, no, you can't do that. And so, I mean, I think our position is that at least by 2011, certainly, the Forest Service made a direct statement essentially that direct authorization saying that you cannot ban snowmobiles from the premises. You have to let them in. And so that's an authorization by the government. And that, I think, I mean, gives rise to a breach of contract claim. Okay, let's see what Counselor Garvin has to say. Yeah, I'll be brief. But just following up on that last question from Judge Stark with regard to what, you know, it doesn't matter what Mr. Murray thought, I think it's also important to point out and to address the issue that we've raised, which is that Mr. Murray's claim was a claim for no longer being able to operate and losing the value of his improvements. And that can only occur when there's a cessation. And as we pointed out, we made that very clear, that was the claim. And we also think we made it clear in our brief that under the restatement, you can't bring that claim until there is a cessation of operations because the damages don't arise until then. So in a way, all of this would be irrelevant if the court were to agree there was a total, this is a total breach claim, which we think is very clear on the face of it, it is. And therefore, that claim cannot be brought until he ceases operating. The court below made the comment that, well, but we can't agree that there's just, there's too much subjectivity here as to when Mr. Murray can decide when to quit. But actually there is, there's abundant authority for that, and I can point the court to that as far as the non-breaching party having the ability to elect at what point in time do they say, this is a total breach and we can't continue, we're going to end this contract. And that authority is in the Black's Law Dictionary, which is at page 38 of our brief, which talks about the party electing the breach to, electing to treat the breach as total rather than partial. It also comes up in the Restatement Second of Contract, Section 236, which is cited in the Indian Michigan Power case we cited too. That refers to a party being able to elect if they're going to pursue a total breach or not. That also comes up in the Kerry Earl case at page 12 and 16 of our reply brief, where we talked about the same thing, that the plaintiff chose not to treat it a certain way. And it's also apparent in the, I know we lost it here, but it's the, in the Restatement of Judgments, which is also cited too in the Michigan, sorry, Indiana Michigan case. And the Restatement Second of Judgments at page 26, which that case cites too, talks about the fact that the plaintiff may elect to treat it as being merely a partial breach or a total breach. So with regard to the issue of when Mr. Murray could decide, I can't continue anymore. The risk is too high. The risk of damage is too high. I could lose everything. That he has a certain, he has a certain amount of, there is a certain amount of subjectivity there based on the legal authority as to at what point in time can you bring a total breach. Okay. Okay. Thank you, sir. Thank you, John. We thank the party for their arguments this morning. And this concludes today's hearing.